**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

KENNY EUGENE LANE

      Debtor

Case No.  12-31902

THE PEOPLES BANK

      Plaintiff

v.

KENNY EUGENE LANE

      Defendant

Adv. Proc. No.  12-3065

**MEMORANDUM ON PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**APPEARANCES:**   GENTRY, TIPTON & McLEMORE, P.C.
      Maurice K. Guinn, Esq.
      Gregory D. Meadows, Esq.
      E. Jerome Melson, Esq.
      Post Office Box 1990
      Knoxville, Tennessee  37901
      Attorneys for the Plaintiff

      LAW OFFICES OF MAYER & NEWTON
      John P. Newton, Jr., Esq.
      1111 Northshore Drive
      Suite S-570
      Knoxville, Tennessee 37919
      Attorneys for the Defendant

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

The Plaintiff filed a Complaint on August 2, 2012, asking the court to award it a judgment in the amount of $1,912,367.23 plus accrued interest, expenses, collection costs, and attorneys' fees and for a determination that the judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2). The Defendant filed Defendant's Answer to Complaint (Answer) on August 30, 2012, asserting a number of affirmative defenses and denying that the Plaintiff is entitled to a nondischargeable judgment.

Before the court is the Motion for Summary Judgment on Behalf of The Peoples Bank (Motion for Summary Judgment) filed by the Plaintiff on March 29, 2013, accompanied by a Statement of Undisputed Material Facts (Statement of Undisputed Facts) and a memorandum of law as required by E.D. Tenn. LBR 7056-1. Attached to the Motion for Summary Judgment and additionally relied upon by the Plaintiff are (1) excerpts from the February 25, 2013 deposition of the Defendant; and (2) the Affidavit of Tracy Thompson, CEO and/or President of the Plaintiff (Thompson Affidavit). The Defendant filed the Defendant's Response to Motion for Summary Judgment (Response) on April 19, 2013, which is supported by a memorandum of law and the Defendant's Response to Plaintiff's Statement of Undisputed Facts (Response to Statement of Undisputed Facts). In further support of his Response, the Defendant relies upon the Affidavit of Kenny Lane (Lane Affidavit) to which he attached the following exhibits: (1) Certificate of Limited Partnership of Lane Properties, L.P. and web services summary data records from the Knox County Register of Deeds; and (2) a Limited Partnership Authorization and Certificate between the Plaintiff and Lane Properties, L.P. executed by the Defendant.

This is a core proceeding.  28 U.S.C. § 157(b)(2)(I) (2006).

# I

The following facts are not in dispute.  On March 19, 2009, the Defendant was a member of and held an ownership interest in H&L Properties, LLC and SHE Group, LLC, two limited liability companies organized under the laws of the State of Tennessee.  STMT. OF UNDISP. FACTS at ¶ 1; RESP. TO STMT. OF UNDISP. FACTS at ¶ 1.  On that same date, H&L Properties, LLC entered into a Modification, Renewal, and Extension Agreement with the Plaintiff with respect to an indebtedness evidenced by two promissory notes dated March 19, 2009, in the principal amounts of $150,000.00 and $875,000.00, respectively (collectively H&L Notes).  STMT. OF UNDISP. MAT. FACTS at ¶¶ 2-3; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 2-3; COMPL. EX. A; COMPL. EX. B; COMPL. EX. C.  The Plaintiff also entered into a Modification, Renewal, and Extension Agreement with SHE Group, LLC on March 19, 2009, with respect to an indebtedness evidenced by two promissory notes in the principal amounts of $375,000.00 and $690,000.00, respectively (collectively, SHE Group Notes).  STMT. OF UNDISP. MAT. FACTS at ¶¶ 4-5; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 4-5; COMPL. EX. D; COMPL. EX. E; COMPL. EX. F.  In connection with the foregoing transactions, the Defendant executed Continuing Guaranty Agreements under which he is jointly and severally obligated to the Plaintiff for payment of the H&L Notes and SHE Group Notes, together with interest, expenses, and attorneys' fees.  STMT. OF UNDISP. MAT. FACTS at ¶¶ 6-7, 24; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 6-7, 24; COMPL. EX. G; COMPL. EX. H.  Although he did not review its contents, the Defendant also executed and the Plaintiff was provided with the Financial Statement Addendum of Kenny Lane dated March 10, 2009, that states the

following:

> Whereas, The Peoples Bank has made reliance on statements by me, Kenny Lane, that I am a beneficiary of a large and valuable estate of my father, Harry Lane, I hereby attest to the following regarding my financial condition:
>
> The estate of Harry Lane consists primarily of real estate, bonds, stocks and cash; that in 2007, the bond and stock portfolio alone was in excess of sixty million dollars; that the real estate holdings number in excess of 200 separate real property holdings that have no liens and that their value is in excess of twenty five million dollars; that I have provided property tax assessment values to The Peoples Bank for many of these properties to demonstrate their value; that I have been granted a seventeen and one half percent outright ownership of this estate; that there is no spendthrift provision in the estate or resulting trust that prevents me from pledging my interest in the estate or trust to The Peoples Bank; and that I expect payment of the estate and or trust to begin in 2009.

THOMPSON AFF. EX. 1. At that time, the Defendant did not know whether he was a beneficiary of his father's estate and he has, to date, not received any inheritance from his father's probate estate. STMT. OF UNDISP. MAT. FACTS at ¶¶ 16, 19-20; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 16, 19-20.

The Defendant additionally, as General Partner, executed and delivered a Deed of Trust on March 19, 2009, whereby Lane Properties, L.P. purported to grant a security interest in real property located at 8860 Carriage House Way, Knoxville, Tennessee (Carriage House Way Property), to the Plaintiff to secure repayment of the H&L Notes and the SHE Group Notes. STMT. OF UNDISP. MAT. FACTS at ¶ 8; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 8; COMPL EX.. I. He also executed a Limited Partnership Authorization and Certificate, swearing under oath that he was the authorized representative and general partner of Lane Properties, L.P.; however, that information was false and he did not, in fact, possess the authority to pledge the Carriage House Way Property as collateral for the H&L Notes and/or the SHE Group Notes. STMT. OF UNDISP. MAT. FACTS at ¶¶ 9-11; RESP. TO

STMT. OF UNDISP. MAT. FACTS at ¶¶ 9-11; COMPL. at ¶¶ 11-12; COMPL. EX. J; ANSWER at ¶¶ 11-12; LANE AFF. at ¶ 4; LANE DEPO. at pg. 133 ln. 8 - pg. 134, ln. 14.  Thereafter, on August 21, 2009, in order to delay exercising its remedies against H&L Properties, LLC, SHE Group, LLC, and the Defendant, the Plaintiff required the Defendant to provide additional collateral, and the Defendant, as "member," executed a Deed of Trust whereby Lane Properties, LLC also pledged real property located at 1612 Oak Ridge Turnpike, Oak Ridge, Tennessee (Oak Ridge Turnpike Property) as collateral for repayment of the H&L Notes and the SHE Group Notes.  STMT. OF UNDISP. MAT. FACTS at ¶¶ 13, 22; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 13, 22; COMPL. at ¶ 13; COMPL. EX. K; ANSWER at ¶ 13; THOMPSON AFF. at ¶ 7.  The Defendant did not, however, possess the authority to pledge the Oak Ridge Turnpike Property on behalf of Lane Properties, LLC and was aware that by not disclosing his lack of authority to the Plaintiff, he was committing an act of fraud. STMT. OF UNDISP. MAT. FACTS at ¶ 14; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 14; COMPL. at ¶¶ 14-15; ANSWER at ¶¶ 14-15; LANE AFF. at ¶ 5; LANE DEPO. at pg. 134 ln. 15 - pg. 136, ln. 22.

Subsequently, H&L Properties, LLC and SHE Group, LLC did not make payments as required and defaulted under the terms of their respective Notes.  STMT. OF UNDISP. MAT. FACTS at ¶ 23; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 23; THOMPSON AFF. at ¶ 8.  As of March 29, 2013, the principal balance owing on the first H&L Note was $92,588.94 plus accrued interest, which continues to accrue at a rate of $12.86 per diem, in the amount of $16,724.06, and late fees of $89.21 for a total of $109,402.21, and the principal balance owing on the second H&L Note was $527,877.11 plus late charges of $5,191.70 for a total of $533,068.81.  THOMPSON AFF. at ¶ 9; see

5

also STMT. OF UNDISP. MAT. FACTS at ¶ 25; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 25.[1] As of March 29, 2013, the principal balance owing on the first SHE Group, LLC Note was $375,000.00 plus accrued interest, which continues to accrue at a rate of $52.08 per diem, in the amount of $73,844.13, and late charges of $1,880.19 for a total of $450,724.32, and the principal balance owing on the second SHE Group, LLC Note was $690,000.00 plus accrued interest, which continues to accrue at a rate of $95.83 per diem, in the amount of $129,188.57, and late charges of $4,889.66 for a total of $824,078.23. THOMPSON AFF. at ¶ 10; *see also* STMT. OF UNDISP. MAT. FACTS at ¶ 26; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 26.[2] The Plaintiff has also incurred attorneys' fees and expenses as of March 29, 2013, in the amount of $83,437.95. STMT. OF UNDISP. MAT. FACTS at ¶ 27; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 27; THOMPSON AFF. at ¶ 11. Under the Continuing Guaranty Agreements, the Defendant is obligated to the Plaintiff for payment in full of the H&L Notes and the SHE Group Notes, accrued interest, expenses, and attorneys' fees. STMT. OF UNDISP. MAT. FACTS at ¶ 24; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 24; COMPL. at ¶¶ 18, 20; ANSWER at ¶¶ 18, 20.

The Defendant filed the Voluntary Petition commencing his Chapter 7 case on May 2, 2012, and received a general discharge of his debts on August 21, 2012. COMPL. at ¶ 4; ANSWER at ¶ 4. On August 2, 2012, the Plaintiff timely filed the Complaint initiating this adversary proceeding.

---

[1] The Statement of Material Facts and Response thereto lump together the two H&L Notes, stating that interest continues to accrue at a rate of $12.86 per diem on the aggregate amount; however, as reflected in Ms. Thompson's Affidavit, interest only accrues on the first note. THOMPSON AFF. at ¶ 9

[2] The Statement of Material Facts and Response thereto also lump together the two SHE Group, LLC Notes, stating that interest continues to accrue at a rate of $147.91 per diem on the aggregate amount; however, as reflected in Ms. Thompson's Affidavit, interest accrues on the first note at a rate of $52.08 and on the second note at a rate of $95.83. THOMPSON AFF. at ¶ 10.

Pursuant to the Pretrial Order entered on September 10, 2010, the issues before the court are as follows: (1) whether the Plaintiff's claims based on the Continuing Guaranty Agreements executed by the Defendant on March 19, 2009, are excepted from discharge under § 523(a)(2)(A) or (B); (2) what is the amount of the Plaintiff's claim against the Defendant; and (3) whether the Plaintiff is entitled to recover collection and other costs and attorneys' fees from the Defendant and if so, the amount. In its Motion for Summary Judgment, the Plaintiff argues that the undisputed facts show that it is entitled to a judgment against the Defendant in the amount of $1,912,367.23 plus accrued interest, expenses, collection costs, and attorneys' fees and that, under 11 U.S.C. § 523(a)(2)(A), the judgment is nondischargeable. The Defendant disputes that the Plaintiff is entitled to summary judgment, arguing that the Plaintiff has not satisfied the elements necessary for a determination of nondischargeability under § 523(a)(2)(A) by not establishing that the Defendant's statements to the Plaintiff were material or that the Plaintiff justifiably relied on the Defendant's representations.

## II

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" utilizing the following procedures:

> (1) ***Supporting Factual Positions***. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

>    evidence to support the fact.
>
>    (2) ***Objection That a Fact Is Not Supported by Admissible Evidence***. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
>    (3) ***Materials Not Cited***. The court need consider only the cited materials, but it may consider other materials in the record.
>
>    (4) ***Affidavits or Declarations***. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c) (applicable in adversary proceedings by virtue of Rule 7056 of the Federal Rules of Bankruptcy Procedure). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986).

As movant, the Plaintiff bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material fact, such that the claims or defenses alleged are factually unsupported, entitling them to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the Defendant, the nonmoving party, to prove that there are genuine disputes of material fact for trial, although he may not rely solely upon allegations or denials contained in the pleadings because reliance upon a "mere scintilla of evidence in support of the nonmoving party will not be sufficient."

*Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). The facts and all resulting inferences are viewed in a light most favorable to the nonmovant, with the court deciding whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243, 106 S. Ct. at 2512. Nevertheless; "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356 (citations omitted).

Having reviewed the Motion for Summary Judgment, the Statement of Undisputed Facts, the Response, the Response to Statement of Undisputed Facts, the Affidavits and other supporting documents, and the pleadings, the court finds that the Plaintiff is entitled to a judgment against the Defendant for the amount owing on the H&L Notes, the SHE Group Notes, and the Continuing Guaranty Agreements including interest, attorneys' fees, and costs of collection as called for under the respective notes. The court will, however, for reasons hereinafter stated, defer determinaton of the amount of the judgment. The court also finds that there is no genuine dispute as to any material fact that the Plaintiff has proved by a preponderance of the evidence that the elements of § 523(a)(2)(A) have been satisfied with the sole exception of whether the Plaintiff was justified in its reliance on the representations made by the Defendant.

**III**

Under § 523(a)(2)(A), an individual is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by [] false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). The court construes § 523(a) liberally in favor of the Defendant and strictly against the Plaintiff, which bears the burden of proving the necessary elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 661, 112 L. Ed. 2d 755 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998). In order to satisfy the requirements of § 523(a)(2)(A), the Plaintiff must prove the Defendant obtained money, property, or services through material misrepresentations that he knew were false or he made with gross recklessness, that the Defendant intended to deceive the Plaintiff, that the Plaintiff justifiably relied on the Defendant's false representations, and that the Plaintiff's reliance was the proximate cause of its losses. *McDonald v. Morgan (In re Morgan)*, 415 B.R. 644, 649 (Bankr. E.D. Tenn. 2009).

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create and foster a false impression, as distinguished from a "false representation" which is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another - something said, done or omitted with the design of perpetrating what is known to be a cheat or deception."

*Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (citations omitted). "[F]alse representations and pretenses encompass statements that falsely purport to depict current or past facts," *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983), and fraudulent intent may be "inferred as a matter of fact" based on the totality of the circumstances when the Defendant has engaged in conduct that was "somewhat blameworthy." *Copeland*, 291 B.R. at 759. Nevertheless, mere negligence or evidence of "[a] 'dumb but honest'

[debtor] does not satisfy the test." *Copeland*, 291 B.R. at 765-66 (quoting *Palmacci v. Umpierrez*, 121 F.3d 781, 788 (1st Cir. 1997)). Likewise,

> a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A). Instead, central to the concept of fraud is the existence of scienter which, for the purposes of § 523(a)(2)(A), requires that it be shown that at the time the debt was incurred, there existed no intent on the part of the debtor to repay the obligation.

*EDM Mach. Sales, Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003) (citations omitted); *see also Palmacci*, 121 F.3d at 788 (stating that an honest belief that the representation is true, even if unreasonably so, "is an insufficient basis for deceit.").

Under Sixth Circuit authority, a subjective standard determines intent. *Rembert*, 141 F.3d at 281.

> A subjective approach, of course, requires that the trier-of-fact focus solely on the individual characteristics of the debtor. Yet, like an objective approach, a subjective approach still entails the utilization of circumstantial evidence given that a debtor will rarely, if ever, admit to acting in a fraudulent manner; helpful in this regard are many of the traditional indicia of fraud – e.g., a suspicious timing of events, insolvency, transfers to family members or other insiders. In utilizing such indicia, however, the Sixth Court cautioned against "factor-counting," instead holding "[w]hat courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent."

*Harrison*, 301 B.R. at 854 (quoting *Rembert*, 141 F.3d at 282; other citations omitted). The court must also find justifiable reliance; i.e., the party seeking a determination of nondischargeability actually relied on the representations and, based upon the facts and circumstances known at the time, their reliance was justifiable. *Morgan*, 415 B.R. at 649. A determination of nondischargeability often comes down to the Defendant's conduct prior to, at the time of, and subsequent to the representations at issue and which witnesses are the most credible. *Copeland*, 291 B.R. at 766;

*Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001)). In essence, in order for a court to make a determination of nondischargeability under § 523(a)(2)(A), the Plaintiff must prove fraud in the inducement.

In this case, there is no dispute that the Defendant, as a member holding an ownership interest in both companies, received money from the Plaintiff under the SHE Group Notes and the H&L Notes executed by the Defendant and that H&L Properties, LLC and the SHE Group, LLC defaulted under their respective Notes and have not repaid the debts they each owed to the Plaintiff, which has sustained a financial loss as a result of the nonpayment and is entitled to a judgment against the Defendant. STMT. OF UNDISP. MAT. FACTS at ¶¶ 24-27; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 24-27; COMPL. at ¶¶ 18, 20; ANSWER at ¶¶ 18, 20; THOMPSON AFF. at ¶¶ 8-10; *see also supra* n.3. There is also no dispute of material fact that the Defendant made false representations to the Plaintiff that, at the time he executed those documents on March 19, 2009 and August 21, 2009, he was authorized to pledge the Carriage House Way Property and the Oak Ridge Turnpike Property as additional collateral, and, as established by his own testimony, that he knowingly and fraudulently gave the Plaintiff that false information. STMT. OF UNDISP. MAT. FACTS at ¶¶ 9-11, 14; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 9-11, 14; COMPL. at ¶¶ 11-12, 14-15; ANSWER at ¶¶ 11-12, 14-15; LANE AFF. at ¶ 4; LANE DEPO. at pg. 133 ln. 8 - pg. 136, ln. 22.[3] Nevertheless, with respect to this Motion for Summary Judgment, the Defendant argues that the representations he made were not material and that the Plaintiff did not justifiably rely on those statements and

---

[3] In his Affidavit, the Defendant states that he "felt I had no choice" and agreed to the Plaintiff's terms "under threat that they would pull the floor plan of my Kia dealership" and that he was "under extreme duress from the Bank . . . during a time of potential severe financial hardship[.]" LANE AFF. at ¶ 8. He does not, nevertheless, dispute that his representations to the Plaintiff were false and made knowingly and intentionally.

representations.

**A**

The Defendant first argues that his representations that he was authorized to pledge the Carriage House Way Property and the Oak Ridge Turnpike Property as collateral or to execute the Limited Partnership Authorization and Certificate and his representations that he was a beneficiary of his father's probate estate as of March 10, 2009, were not material. The court disagrees. Material misrepresentations are defined as "substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision. On the other hand, [a] misrepresentation is not material if the creditor knows it is false or possesses information sufficient to call the representation into question." *Copeland*, 291 B.R. at 791 (citations and quotation marks omitted).

It is disingenuous for the Defendant to argue that his representations concerning his authority to pledge property owned by Lane Properties, L.P. and Lane Properties, LLC as collateral are not material. The record clearly reflects that the Plaintiff required additional property in association with the H&L Notes and SHE Group, LLC Notes and the Modification, Renewal, and Extension Agreements for each, whereby the Defendant pledged the Carriage House Way Property, executed the Limited Partnership Authorization and Certificate wherein the Defendant swore under oath that he was an authorized representative and general partner of Lane Properties, L.P., and provided the Plaintiff with the March 10, 2009 Financial Statement Addendum. STMT. OF UNDISP. MAT. FACTS at ¶¶ 8-9; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶¶ 8-9; THOMPSON AFF. at ¶¶ 3, 5-7. Although

the Defendant disputes that the Financial Statement Addendum was ever requested by the Plaintiff or identified within any of the loan documents as such, in her Affidavit, Ms. Thompson testified that the Financial Statement Addendum as well as the Defendant's providing the Plaintiff with Deeds of Trust to the Carriage House Way Property and the Oak Ridge Turnpike Property were all conditions precedent to the Plaintiff entering into the H&L Modification Agreement and the SHE Group Modification Agreement. THOMPSON AFF. at ¶¶ 3-6. Additionally, had the Defendant not pledged the Oak Ridge Turnpike Property as collateral, the Plaintiff would not have delayed exercising its remedies against H&L Properties, LLC, the SHE Group, LLC, and/or the Defendant. STMT. OF UNDISP. MAT. FACTS at ¶ 22; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 22; THOMPSON AFF. at ¶¶ 4, 7.

The record also clearly reflects that the Plaintiff required additional collateral in order to delay exercising its remedies against H&L Properties, LLC and the SHE Group, LLC in August 2009, at which time the Defendant pledged the Oak Ridge Turnpike Property without authorization. STMT. OF UNDISP. MAT. FACTS at ¶ 13; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 13; THOMPSON AFF. at ¶¶ 4, 7. At that time, the Plaintiff did not know that the Defendant's representations were false, that he was not authorized to pledge property of either company, or that the Defendant's representations that he was a beneficiary of his late father's estate and expected to begin receiving payments from the estate in 2009, were false. There is no question that each of these representations was material and affected the Plaintiff's lending decisions. THOMPSON AFF. at ¶¶ 3, 5-7.

**B**

The Defendant also argues that, because the Plaintiff could easily have confirmed that he was not the general partner of Lane Properties, L.P. or the managing member of Lane Properties, LLC, the Plaintiff's reliance on his representations was not justified. The determination as to whether a creditor's reliance was justified is subjective, "based on the facts and circumstances surrounding each individual case," although a prerequisite is that the creditor "actually relied" on the misrepresentations. *Copeland*, 291 B.R. at 766-67. "Under this standard, a creditor will be found to have justifiably relied on a representation even though [it] might have ascertained the falsity of the representation had [it] made an investigation." *McCoy*, 269 B.R. at 198 (citations and quotation marks omitted). The Affidavit of Ms. Thompson confirms that the Plaintiff actually relied on the Defendant's representations that he was authorized to pledge the Carriage House Way Property, to pledge the Oak Ridge Turnpike Property, and that he was to begin receiving payments as a beneficiary of his late father's estate. THOMPSON AFF. at ¶¶ 3-5. Having met that prerequisite, the court must now determine whether the reliance was justified.

In support of his arguments to the contrary, the Defendant states in his Affidavit that the Certificate of Limited Partnership of Lane Properties, L.P. dated June 29, 1997, naming Harry Lane and Mary Lane as General Partners is of record with the Knox County Register of Deeds, having been recorded on July 1, 1997, and that the Plaintiff could have ascertained through minimal investigation that there are no documents of record indicating that he has an interest in Lane Properties, L.P. LANE AFF. at ¶¶ 2, 6; LANE AFF. EX. 1. The Defendant also states that he "believed . . . the bank was aware that I was not the general partner through their lawyer or agents" because

15

the Limited Partnership Authorization and Certificate submitted to him in March 2009 "had been typed with Mary Lane as the general partner and, at the signing, it was crossed off and my name written in as general partner." LANE AFF. at ¶ 7.  Finally, the Defendant states that the Plaintiff did not contact his mother, Mary Lane, at the time he executed the documents in either March or August 2009, to confirm that he was authorized to do so on behalf of Lane Properties, L.P. and/or Lane Properties, LLC.  LANE AFF. at ¶ 5.

The issues raised by the Defendant's Affidavit, the Limited Partnership Authorization and Certificate, and documents submitted evidence that there is a genuine dispute as to whether the Plaintiff's reliance on the Defendant's misrepresentations was justifiable.  The Limited Partnership Authorization and Certificate, which was tendered to the Defendant for his execution in March 2009, was prepared by the Plaintiff's attorney with a signature line for Mary Lane; however, her signature line was marked through and the Defendant's was handwritten.  COMPL. EX. J; LANE AFF. EX. 2. The Defendant's signature was then notarized by the Attorney who prepared the Limited Partnership Authorization and Certificate.  COMPL. EX. J; LANE AFF. EX. 2.  The document identifies "[a]ny General Partner . . . [as] an 'Authorized Representative' of the Partnership with the authority, acting alone, to bind the Partnership" and then designates the Defendant as "Authorized Representative." COMPL. EX. J at ¶¶ D, E.6; LANE AFF. EX. 2 at ¶¶ D, E.6.  Additionally, the Limited Partnership Authorization and Certificate expressly references the Certificate of Limited Partnership dated June 19, 1997, and recorded with the Knox County Register of Deeds, which identifies Harry F. Lane and Mary Lane as the General Partners.  COMPL. EX. J at ¶ K; LANE AFF. EX. 2 at ¶ K.

Each of these instances within the Limited Partnership Authorization and Certificate raise the question concerning whether the Plaintiff should have relied upon the Defendant's representations. Likewise, the record reflects that the Defendant executed the Financial Statement Addendum without reviewing its contents, STMT. OF UNDISP. MAT. FACTS at ¶ 13; RESP. TO STMT. OF UNDISP. MAT. FACTS at ¶ 20, and, as stated in his Affidavit, the Defendant "felt I had no choice" and agreed to the Plaintiff's terms "under threat that they would pull the floor plan of my Kia dealership" and that he was "under extreme duress from the Bank . . . during a time of potential severe financial hardship[.]" LANE AFF. at ¶ 8. Although his feelings of duress and financial distress do not transform his fraud into something excusable, the Defendant's mental state at the time taken together with the foregoing questions concerning the Limited Partnership Authorization and Certificate and the noticeable lack of documentation concerning the Defendant's authority with respect to Lane Properties, LLC in any capacity, do give rise to additional questions of material fact.

## IV

Based upon the record, the Plaintiff has met its burden of proof that it is entitled to a judgment against the Defendant. The Plaintiff has additionally met its burden of proof under § 523(a)(2)(A) that the Defendant obtained money through material misrepresentations that he knew at the time were false, that he intended to deceive the Plaintiff, and that the Plaintiff's reliance was the proximate cause of its losses. A genuine dispute exists, however, concerning whether the Plaintiff justifiably relied on the Defendant's misrepresentations, therefore precluding entry of summary judgment that the Plaintiff is entitled to a determination that its judgment is

nondischargeable under 11 U.S.C. § 523(a)(2)(A). The court will, however, grant the Plaintiff a partial summary judgment on all issues except the justifiable reliance issue. A trial will be set to finally determine this issue, to fix the amount of the monetary judgment to which the Plaintiff is entitled, and to determine whether that judgment is nondischargeable.

An Order consistent with this Memorandum will be entered.

FILED: September 16, 2013

>BY THE COURT
>
> */s/ RICHARD STAIR, JR.*
>
> RICHARD STAIR, JR.
> UNITED STATES BANKRUPTCY JUDGE