## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re
                                                    Case No.  12-31902

KENNY EUGENE LANE

        Debtor


       THE PEOPLES BANK

              Plaintiff

          v.                          Adv. Proc. No.  12-3065

       KENNY EUGENE LANE

             Defendant


### M E M O R A N D U M

**APPEARANCES:**   GENTRY, TIPTON & McLEMORE, P.C.
               E. Jerome Melson, Esq.
               Gregory D. Meadows, Esq.
               Post Office Box 1990
               Knoxville, Tennessee  37901
               Attorneys for Plaintiff

               LAW OFFICES OF MAYER & NEWTON
               John P. Newton, Jr., Esq.
               1111 Northshore Drive
               Suite S-570
               Knoxville, Tennessee  37919
               Attorneys for Defendant


**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff on August 2, 2012, asking the court to award it a judgment against the Defendant and for a determination that the judgment is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) (2006). On March 29, 2012, the Plaintiff filed the Motion for Summary Judgment on Behalf of The Peoples Bank (Motion for Summary Judgment).  In partial resolution of the Motion for Summary Judgment, the court entered an Order supported by a Memorandum on Plaintiff's Motion for Summary Judgment on September 16, 2013, granting the Motion for Summary Judgment on all issues other than the amount of the judgment to be entered against the Defendant and whether the Plaintiff's reliance on the Defendant's misrepresentations was justifiable, which would, in turn, decide the question of whether the judgment was nondischargeable.  On December 4, 2013, the parties filed Stipulations stating that the Plaintiff is entitled to a judgment against the Defendant in the amount of $1,960,812.86, "the sum of which includes the principal amounts due under H&L Note 1, H&L Note 2, SHE Group Note 1, and SHE Group Note 2 (as those terms are defined in ¶¶ 6 and 7 of the Complaint), together with per diem interest accruing thereon through December 11, 2013, late charges, and Plaintiff's reasonable attorney fees." STIP. at ¶ 1.

The trial resolving the remaining issue in this adversary proceeding was held on December 11, 2013.  The record before the court consists of sixteen exhibits introduced into evidence, and the testimony of three witnesses: Raymond Lacy, Tracy Thompson, and the Defendant. The facts, which are not in dispute, were set forth in detail in the court's Memorandum on Plaintiff's Motion for Summary Judgment and will not be restated herein.

2

Under § 523(a)(2)(A), an individual is not discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by [] false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). In order to satisfy the requirements of § 523(a)(2)(A), the Plaintiff must prove the Defendant obtained money, property, or services through material misrepresentations that he knew were false or he made with gross recklessness, that the Defendant intended to deceive the Plaintiff, that the Plaintiff justifiably relied on the Defendant's false representations, and that the Plaintiff's reliance was the proximate cause of its losses. *McDonald v. Morgan (In re Morgan)*, 415 B.R. 644, 649 (Bankr. E.D. Tenn. 2009). As stated in the Memorandum on Plaintiff's Motion for Summary Judgment, the Defendant, as a member holding an ownership interest in H&L Properties, LLC and SHE Group, LLC, received money from the Plaintiff under the SHE Group Notes and the H&L Notes and the Continuing Guaranty Agreements executed by the Defendant. H&L Properties, LLC and SHE Group, LLC defaulted under their respective Notes by not repaying the debts owed to the Plaintiff, which has sustained a financial loss as a result of the nonpayment. Additionally, at the time he executed those documents on March 19, 2009, it is undisputed that the Defendant knowingly and fraudulently made false representations to the Plaintiff that he was authorized to pledge the 8860 Carriage House Way Property as additional collateral.[1] It was also determined that the Plaintiff actually relied on the Defendant's misrepresentations, leaving the question of whether the Plaintiff's reliance on the Defendant's representations was justifiable as the sole remaining issue following summary judgment.

---

[1] The fraud continued as the Defendant, on August 21, 2009, falsely representing himself to be a "member" of Lane Properties, LLC executed a Deed of Trust whereby Lane Properties, LLC pledged real property at 1612 Oak Ridge Turnpike, Oak Ridge, Tennessee, as additional collateral to secure the H&L Notes and SHE Group Notes. TRIAL EX. 11.

3

A determination of whether the Plaintiff's reliance was justified is subjective, "based on the facts and circumstances surrounding each individual case[.]" *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 766-67 (Bankr. E.D. Tenn. 2003). "Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man.  Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases." *Field v. Mans*, 516 U.S. 59, 70-71, 116 S. Ct. 437, 444, 133 L. Ed. 2d 351 (1995) (citation omitted).  "To constitute justifiable reliance, the plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility." *Stewart Title Guar. Co. v. Roberts-Dude*, 497 B.R. 143, 151 (S.D. Fla. 2013) (citation, quotation marks, and brackets omitted).  "Under this standard, a creditor will be found to have justifiably relied on a representation even though [it] might have ascertained the falsity of the representation had [it] made an investigation." *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001) (citations and quotation marks omitted). "This rule applies whether the investigation would have been costly and required extensive effort or could have been made without 'any considerable trouble or expense.'" *Sanford Institution for Sav. v. Gallo*, 156 F.3d 71, 75 (1st Cir. 1998) (citation omitted).

As stated in the Memorandum on Plaintiff's Motion for Summary Judgment, the genuine dispute as to whether the Plaintiff's reliance on the Defendant's misrepresentations was justifiable was grounded on the following:

> The Limited Partnership Authorization and Certificate, which was tendered to the Defendant for his execution in March 2009, was prepared by the Plaintiff's attorney

4

with a signature line for Mary Lane; however, her signature line was marked through and the Defendant's was handwritten. The Defendant's signature was then notarized by the Attorney who prepared the Limited Partnership Authorization and Certificate. The document identifies "[a]ny General Partner . . . [as] an 'Authorized Representative' of [Lane Properties, L.P.] with the authority, acting alone, to bind the Partnership" and then designates the Defendant as "Authorized Representative." Additionally, the Limited Partnership Authorization and Certificate expressly references the Certificate of Limited Partnership dated June 19, 1997, and recorded with the Knox County Register of Deeds, which identifies Harry F. Lane and Mary Lane as the General Partners.

MEMO. ON PL.'S MOT. FOR SUMM. JUDG. at 16-17 (exhibit references omitted); *see* TRIAL EX. 10;

TRIAL EX. 12. The Defendant has admitted that he was not the General Partner of Lane Properties,

L.P. when he signed that document even though he expressly told Mr. Lacy that he was a general

partner during the closing on March 19, 2007. On summary judgment and at the trial of this issue,

the Defendant argued that the Plaintiff was not justified in relying on his misrepresentations

concerning his authority to act on behalf of Lane Properties, L.P. based upon Mr. Lacy's knowledge

of the Certificate of Limited Partnership of Lane Properties, L.P. TRIAL EX. 13. The court disagrees.

After hearing the testimony of the witnesses, the court has no difficulty in finding that the Plaintiff's

reliance on the Defendant's misrepresentations was, in fact, justified, and the judgment in the amount

of $1,960,812.86 to which the Plaintiff is entitled is nondischargeable.

Mr. Tracy Thompson, CEO of the Plaintiff, testified that the Plaintiff is a small community

bank with a total of four branches, two located in Virginia and two located in Tennessee, and has

approximately twenty-one employees between the four branches. The Plaintiff does not have in-

house counsel, and Mr. Thompson testified that he has relied on Mr. Lacy to represent the Plaintiff's

interests in all legal matters including the drafting and closing of large loans such as those taken out

by the Defendant. With respect to the parties' prior course of dealing, Mr. Thompson testified that

the Defendant became a customer of the Plaintiff in 2006, through Bob Bryant, who was a loan officer with the bank at the time. Between 2006 and 2009, the Defendant established himself to be a good customer by taking out a number of loans which he repaid early or within the required terms, and the Plaintiff had no reason to believe that he would act any differently in paying off the H&L Notes and SHE Group Notes. Additionally, throughout that time, the Defendant supplied the Plaintiff with tax returns and financial statements as well as maintained a satisfactory credit score. With respect to the H&L Notes and SHE Group Notes, because they were among the Plaintiff's largest loans and needed to be "healthier," Mr. Thompson testified that the Plaintiff needed to cross-collateralize and receive the pledge of additional collateral from the Defendant; however, based upon the parties' prior business dealings and the fact that the Defendant had provided the Plaintiff with tax returns and financial statements, had good credit scores, and the Financial Statement Addendum dated March 10, 2009, stating that the Defendant was a beneficiary to his father's estate wherein he "[had] been granted a seventeen and one half percent outright ownership of" his father's estate which, as represented by the Defendant, exceeded $85,000,000.00 in value, *see* TRIAL EX. 14, the Plaintiff allowed the Defendant to choose which of his properties he wanted to pledge, including the Carriage House Way Property, which was the Defendant's residence, a fact known by the Plaintiff.[2]

Mr. Lacy testified that he prepared the Limited Partnership Authorization and Certificate in anticipation of the closing, which he delivered to Bob Bryant and the Defendant in advance in order to obtain the proper authority for its execution. Mr. Lacy also testified that because of the large

---

[2] With respect to the Tennessee Deed of Trust pledging the Oak Ridge Turnpike Property executed on August 21, 2009, Mr. Thompson testified that the Plaintiff required this additional collateral after the Defendant's loans became past due in July 2009, and collateral in which the Plaintiff held a second priority lien was foreclosed by a bank in Athens, Tennessee. *See* TRIAL EX. 11; *supra* n.1.

amount of the loans, he and Bob Bryant had engaged in a number of conversations and exchanged information in preparation for the closing.  Mr. Lacy was present at the closing on March 19, 2009, at which time the Defendant told him that Mary Lane had made him a general partner when Harry Lane died and that he had the authority to execute the Tennessee Deed of Trust pledging the Carriage House Way Property and the Limited Partnership Authorization and Certificate on behalf of Lane Properties, L.P.  *See* TRIAL EX. 9; TRIAL EX. 10.  Mr. Lacy further testified that, based upon the Defendant's representations and the fact that, after Mr. Lacy had stated that signing without authority would constitute perjury and fraud against a federally insured banking institution, the Defendant looked him in the eye and assured him that he was a general partner of and authorized to execute documents on behalf of Lane Properties, L.P., Mr. Lacy relied upon the Defendant's representations. Additionally, based upon those representations, Mr. Lacy notarized the Defendant's signature on the Modification, Renewal and Extension Agreement for $690,000.00 and Limited Partnership Authorization and Certificate, *see* TRIAL EX. 4; TRIAL EX. 10, and caused a title insurance policy to be issued by Summit Title Company.  TRIAL EX. 12.

As for the Defendant, he testified that he lied to the Plaintiff in order to keep his business going and that he would have lost the floor plan for his Kia dealership had he not obtained the additional funds from the Plaintiff.  He denied that Mr. Lacy told him point blank that he would be defrauding a federally insured institution and denied that he had received a copy of the Limited Partnership Authorization and Certificate prior to the March 19, 2009 closing.  The Defendant also testified that Mr. Lacy had not requested any additional information from him at the closing to prove that he was, in fact, a general partner of Lane Properties, L.P. nor had Mr. Lacy or anyone with the

7

Plaintiff attempted to contact Mary Lane to verify that the Defendant was a general partner as he

stated.

The court does not find the Defendant's testimony to be credible.  As an initial matter, the

Defendant testified that he knowingly misrepresented his authority to execute documents as a general

partner of Lane Properties, L.P. to the Plaintiff and its agent Mr. Lacy with the intent to deceive the

Plaintiff in order to obtain the requisite funds he needed in order not to lose his dealership floor plan,

calling into question his veracity in general.  Additionally, during his testimony, the Defendant was

questioned by the Plaintiff's counsel about the April 19, 2013 Affidavit submitted in connection with

the Motion for Summary Judgment before this court, in which the Defendant, under oath, stated that

he "believed at that time the bank was aware that I was not the general partner through their lawyer

or agents and proceeded to have me execute the documents as the general partner."  LANE AFF. at

¶ 7.  This statement under oath in his Affidavit conflicted with testimony given by the Defendant in

a deposition taken on November 18, 2013, when the Defendant testified to the following:

> Q: At the time you signed the document there in front of you as general partner, you
> indicated earlier you didn't have any reason to believe that the bank doubted you at
> that time when you made that statement.  Is that correct?
>
> A: That's correct.
>
> . . . .
>
> Q: Did Ray Lacy, to your knowledge, have any reason to doubt your representation
> that you were general partner of the entity set forth on that authorization of the
> limited partnership?
>
> A: No.

LANE DEPO. at pg. 16, ln. 21 – pg. 17, ln. 23.  This conflicting testimony, along with his own

8

admissions and testimony at trial, evidence to the court the Defendant's propensity for not telling the truth.

On the other hand, the court finds the testimony of Mr. Thompson and Mr. Lacy to be entirely credible and persuasive. First, Mr. Thompson testified that because of the Plaintiff's small size, it did not employ general counsel but consistently relied upon Mr. Lacy, who has been a respected member of the Knoxville legal community and licensed by the State of Tennessee to practice law since 1975, for the Plaintiff's legal work. Mr. Thompson also testified that the Defendant had, between 2006 and 2009, established himself as a good customer with the Plaintiff by consistently paying all loans on time or early, that the Defendant had good credit scores, and that the Defendant had presented the Plaintiff with the requisite financial statements and tax returns as requested. Prior to the March 19, 2009 closing, the Defendant had also presented the Plaintiff with the Financial Statement Addendum dated March 10, 2009, which states

> Whereas, The Peoples Bank has made reliance on statements by me, Kenny Lane, that I am a beneficiary of a large and valuable estate of my father, Harry Lane, I hereby attest to the following regarding my financial condition:
>
> The estate of Harry Lane consists primarily of real estate, bonds, stocks and cash; that in 2007, the bond and stock portfolio alone was in excess of sixty million dollars; that the real estate holdings number in excess of 200 separate real property holdings that have no liens and that their value is in excess of twenty five million dollars; that I have provided property tax assessment values to The Peoples Bank for many of these properties to demonstrate their value; that I have been granted a seventeen and one half percent outright ownership of this estate; that there is no spendthrift provision in the estate or resulting trust that prevents me from pledging my interest in the estate or trust to The Peoples Bank; and that I expect payment of the estate and or trust to begin in 2009.

TRIAL EX. 14. Based upon the Plaintiff's relationship with the Defendant together with the foregoing documents as well as the Defendant looking him in the eye and stating point blank that he was a

general partner of Lane Properties, L.P., Mr. Lacy proceeded with the March 19, 2009 closing.  This prior course of dealing with the Defendant formed the primary basis for the Plaintiff's and Mr. Lacy's reliance on the Defendant's representations, and this reliance was justifiable. Additionally, the court finds it irrelevant that the Defendant had not, in any of the financial documentation provided to the Plaintiff between 2006 and 2009, made any representations concerning Lane Properties, L.P. based upon his representations at that time, especially in light of the representations made in the Financial Statement Addendum which mentions the Defendant's father, Harry Lane, by name and sets forth the Defendant's purported inheritance interest in his estate, which the document states includes "in excess of 200 separate real property holdings" but does not provide a listing thereof.  The fact that none of these documents expressly names Lane Properties, L.P. as being one of the interests that the Defendant received or was to receive following his father's death does not negate what the court finds to be justifiable reliance on the part of the Plaintiff and Mr. Lacy.

In summary, the Defendant knowingly and with fraudulent intent obtained money from the Plaintiff through material misrepresentation upon which the Plaintiff justifiably relied, which the Defendant has not repaid to the detriment of the Plaintiff.  The Plaintiff is entitled to a Judgment in the amount of $1,960,812.86 against the Defendant, and this Judgment will be nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

A Judgment consistent with this Memorandum will be entered.


FILED:  December 20, 2013

                              BY THE COURT

                              */s/  RICHARD STAIR, JR.*

                              RICHARD STAIR, JR.
                              UNITED STATES BANKRUPTCY JUDGE